## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TODD DILLON,** individually, and **KAREN LONG**, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff,*<br><br>*v.*<br><br>**VENTURE 475, LLC,** a New York limited liability company D/B/A **SYNERGY CAPITAL**,<br><br>        *Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Todd Dillon ("Dillon" or "Plaintiff Dillon") and Plaintiff Karen Long ("Long" or "Plaintiff Long") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Venture 475, LLC d/b/a Synergy Capital ("Synergy Capital" or "Defendant Synergy Capital"), to stop Synergy Capital from violating the Telephone Consumer Protection Act by making unsolicited, prerecorded and autodialed calls to consumers *without their consent*, including to consumers registered on the National Do Not Call registry, and to otherwise obtain injunctive and monetary relief for all persons injured by the conduct of Synergy Capital. The Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## INTRODUCTION

**Synergy Capital Markets Business Loans to Companies Throughout the United States**

      1.      Synergy Capital was formed in 2011 as a capital loan provider focused on providing capital to businesses.[1]

      2.      According to its website, "Synergy Capital has helped over 1,000 businesses grow and funded over $100,000,000."[2]

      3.      Venture 475, LLC uses the name Synergy Capital in order to avoid liability for its unsolicited telemarketing calls. There are references online linking Venture 475, LLC and Synergy Capital. The two companies share the same address:



| Selected Entity Address Information |
| --- |
| **DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity) |
| VENTURE 475 LLC |
| 160 PEARL ST., 6TH FLOOR |
| NEW YORK, NEW YORK, 10005 |
| **Registered Agent** |
| REGISTERED AGENT REVOKED |

[3]

**SYNERGY CAPITAL**

160 Pearl Street, 6th Floor,

New York, NY 10005 [4]

In addition, on the Better Business Bureau page for Synergy Capital, Venture 475, LLC is listed as an alternate business name:

**Alternate Business Names**

- Venture 475 LLC [5]

---

[1] https://synergycap1.com/aboutus
[2] *id*
[3] New York Corporate Registry
[4] https://synergycap1.com/aboutus
[5] https://www.bbb.org/new-york-city/business-reviews/financing/synergy-capital-in-new-york-ny-132903

4.      Glen DeLuca is the current CEO of Synergy Capital[6] and the agent of service for Venture Group 475, Inc. which was dissolved in August 31, 2016.

5.      Synergy Capital buys lists of leads to target with their autodialed telemarketing of business loans.  However, Synergy Capital failed to remove cellular telephone numbers or other telephone numbers registered on the Do Not Call registry from that list.

6.      In response to these calls, Plaintiffs file this lawsuit seeking injunctive relief, requiring Defendant to cease from violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by placing unsolicited prerecorded calls and autodialed calls to consumers' cellular telephone numbers using an automatic telephone dialing system and otherwise calling telephone numbers registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

**PARTIES**

7.      Plaintiff Todd Dillon is a Wilmington, North Carolina resident.

8.      Plaintiff Karen Long is a Lee, New Hampshire resident.

9.      Defendant Synergy Capital is a New York limited liability company headquartered in 160 Pearl Street, 6th Floor, New York, NY 10005. Defendant conducts business throughout this District and the United States.

**JURISDICTION AND VENUE**

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute for which there is federal question jurisdiction.

---

[6] https://www.linkedin.com/in/glen-deluca-73b45229/

11.     This Court has personal jurisdiction over the Defendant and venue is proper in this district because Defendant Synergy Capital resides in this District and because the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

## COMMON ALLEGATIONS

**Synergy Capital Places Prerecorded and Autodialed Calls to Consumers Without Consent, Regardless of Whether their Numbers are in the National Do Not Call Registry**

12.     Synergy Capital's overall marketing plan involves placing prerecorded calls and autodialed phone calls to consumers without consent, regardless of whether those consumers have their phone numbers registered with the DNC.

13.     Synergy Capital places incessant calls to individuals across the United States, until a sale is achieved. As former employees of Synergy Capital explain:

- "The management tells [their] worker to lead people to believe that they would not stop calling them until they sign up."[7]

- "call[ing] 4-8 times a day with everyone calling the same lists."[8]

- "The company encourages utilizing false sales pitches and salespeople misrepresent their function in order to get in touch with decision makers. Salespeople will stop at nothing to get through, and cannot accept no as an answer."[9]

14.     Synergy Capital is open about their use of an autodialer and about placing prerecorded calls.  In fact, on its website, Synergy Capital seeks consent from consumers call them using an autodialer:

---

[7] https://www.indeed.com/cmp/Synergy-Capital/reviews?fcountry=ALL
[8] *id*
[9] *id*

By clicking "**SUBMIT**", you (i) consent to receiving calls and messages, including automated calls for marketing purposes, from Synergy Capital or its representatives or agents at the telephone number provided above (including mobile telephone number), and acknowledge that no purchase of credit or services is contingent upon such consent; and (ii) acknowledge that you have read Synergy Capital's Privacy Policyand understand that you may opt out of receiving communications of your choice from Synergy Capital as provided in the Privacy Policy. If uploading documents, the following file formats are supported: jpg, jpeg, gif, png, bmp, tif, psd, pdf, doc, docx, xls, xlsx, txt, mp3, mp4, aac, wav, au, wmv, avi, mpg, mpeg, zip, gz, rar, z, tgz, tar, sitx.

[10]

15.     Not surprisingly, given Synergy Capital's unsolicited telemarketing practices, there are numerous consumer complaints posted online about incessant unsolicited calls from Synergy Capital:

- "This company uses computerized calling to see if you are home. When you answer, there is nothing on the other line (sometimes you hear your echo). Then 24 hours later, you get a call from Ken or someone else at Synergy Capital, asking how your finances are going, and if you want a loan."[12]

- "This company called me 15-20 times per day. I have asked repeatedely to stpp calling and they just call from different area codes throughout the country."[13]

- "This business continues to call our business 10-20 per day during business hours. I have asked for several weeks to be removed from their calling list – no action taken. Now the business is calling from multiple numbers using multiple company names and personal names on caller id. Very rude on telephone several have actually raised their voices at me. They leave you with no choice nut to hang up on them because they will not stop talking once told you are not interested and ask to be removed from their calling list. They totally ignore you and have come to terms of harassment."[14]

- "This number calls me every single day on my personal cell phone asking for a business. I keep telling them that I am NOT a business and to remove my number; they either hang up on me or on a rare day, someone will say that it won't happen again. And yet, it continues the very next day….."[15]

- "This number is clearly looking for a business and they keep calling my PERSONAL cell phone. Clearly, I'm not a business owner.. but each time that I try to advise them

---

[10] http://synergycap1.com/contactus
[12] https://www.ripoffreport.com/reports/synergy-capital/new-york-new-york/synergy-capital-constant-badgering-over-the-phone-using-computer-bots-to-call-house-for-1403793
[13] https://www.revdex.com/reviews/synergy-capital/1527638
[14] https://www.revdex.com/reviews/synergy-capital/1527638
[15] https://800notes.com/Phone.aspx/1-646-661-2726

of this, they apologize, say they'll remove my number and the very next day – they're calling me again."[16]

16.     By placing the unsolicited telephone calls at issue in this Complaint, Defendant caused the Plaintiffs and the other members of the Classes actual harm and cognizable legal injury.

17.     This includes the aggravation and nuisance and invasions of privacy that result from the unsolicited prerecorded and autodialed telephone calls that are being made to cellular phones, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

18.     In response to the unlawful conduct of Defendant, the Plaintiffs file this action seeking an injunction requiring Defendant to cease all unwanted prerecorded and autodialed calls, and calls to phone numbers registered on the DNC, and an award of statutory damages to the members of the Classes under the TCPA.

## ALLEGATIONS OF PLAINTIFF DILLON

19.     On May 9, 2018, Plaintiff Dillon received a prerecorded phone call on his cellular phone from Defendant using the phone number 646-661-2726 at 1:18 PM. Plaintiff pressed the button that the prerecorded message indicated would lead to a live agent and Plaintiff then asked the agent to stop calling him once he confirmed that the company name calling him was Synergy Capital.

20.     Despite his request for the calls to stop, Plaintiff Dillon received another prerecorded call on May 10, 2018 at 9:11 from Defendant using phone number 646-661-2726. As with the previous call, Plaintiff pressed the button leading to a live agent and again asked for the calls to stop.

---

[16] https://800notes.com/Phone.aspx/1-646-661-2726/2

21.     On May 14, 2018 Plaintiff Dillon received 5 more calls from Defendant at 9:05 AM, 1:07 PM, 2:06 PM, 4:28 PM and 5:00 PM. Plaintiff answered the prerecorded calls at 1:07 PM and 2:06 PM, and both times requested for the calls to stop.

22.     In addition to the aforementioned calls, Plaintiff also received calls from Defendant on April 30, 2018, May 1, 2018, May 4, 2018 and May 9, 2018. None of these calls were answered and all of them were from Defendant using phone number 646-661-2726.

23.     The calls that Plaintiff Dillon received caused great frustration as they interfered with his ability to use his phone.

24.     Plaintiff Dillon has never provided his phone number to Defendant or any other party from which Defendant's agents may have purchased leads from regarding business loans. Simply put, Dillon has never provided his prior express written consent to Defendant to place prerecorded solicitation telephone calls to him.

## ALLEGATIONS OF PLAINTIFF LONG

25.     Plaintiff Long registered her cellular number on the National Do Not Call Registry on April 21, 2005 in order to avoid receiving unsolicited telemarketing calls.

26.     On March 5, 2018 Plaintiff received an autodialed call to her cellular phone from Defendant using phone number 718-310-3227. When Plaintiff answered the call, there was dead air before the call ended, a common sign of an autodialer.

27.     Plaintiff received a second autodialed call on March 14, 2018 at 9:10 AM from Defendant, this time using phone number 646-661-2726. Plaintiff answered this call, but there was again dead air and no agent came on the line and the call automatically ended.

28.     Later that day, Plaintiff received another call to her cellular number at 10:57 AM from the same phone number 646-661-2726. As with the previous two calls, there was dead air when the Plaintiff answered, no agent on the line, and the call automatically ended.

29.     On March 16, 2018 at 10:23 AM and again on March 20, 2018 at 9:43 AM,

Plaintiff received additional dead air calls from Defendant using phone number 646-661-2726.

30.     Defendant continued to call Plaintiff's cellular phone number on the following

dates using phone number 646-661-2726:

> March 27, 2018 – 5:24 PM
> April 4, 2018 – 4:36 PM
> April 6, 2018 – 11:12 AM
> April 9, 2018 – 3:53 PM
> April 16, 2018 – 4:43 PM
> April 27, 2018 – 11:51 AM
> April 30, 2018 – 6:03 PM (called twice, back-to-back)
> May 1, 2018 – 1:31 PM (called twice, back-to-back)
> May 2, 2018 – 6:57 PM
> May 3, 2018 – 2:07 PM (called twice, back-to-back)
> May 4, 2018 – 2:06 PM
> May 7, 2018 – 11:40 AM
> May 9, 2018 – 4:03 PM
> May 10, 2018 – 3:29 PM
> May 14, 2018 – 5:02 PM
> May 15, 2018 – 9:51 AM
> May 31, 2018 – 6:15 PM (called twice, back-to-back)
> June 6, 2018 – 3:59 PM
> June 11, 2018 – 9:30 AM
> June 13, 2018 – 9:30 AM
> June 19, 2018 – 1:34 PM
> June 20, 2018 – 6:08 PM
> June 27, 2018 – 6:57 PM
> June 28, 2018 – 6:39 PM

31.     Voicemail messages were left for a number of the calls Plaintiff received,

especially when she was called in June, 2018. All of the voicemails Plaintiff received contained

background sounds, but no messages were left by an agent, another sign that the calls were

automatically made.

32.     Plaintiff Long does not currently own a business and has not been seeking

business loans.

33.     Plaintiff Long has never provided her phone number to Defendant.

34.     The unauthorized telephone calls made by Defendant Synergy Capital, as alleged herein, have harmed the Plaintiffs in the form of annoyance, nuisance, and invasion of privacy, and disturbed their use and enjoyment of their phones, in addition to the wear and tear on the phone hardware (including the phone's battery) and the consumption of memory on the phones.

35.     Seeking redress for these injuries, Plaintiffs, on behalf of themselves and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls and unsolicited autodialed calls to cellular telephones and unsolicited calls to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiffs' TCPA Claims Arising From Calls Made by Defendant Synergy Capital**

36.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following four Classes:

> **Prerecorded No Consent Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using a prerecorded message, and (3) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call the Plaintiffs, or (b) they did not obtain prior express written consent.

> **Autodialed No Consent Class:** All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using the same equipment Defendant used to call Plaintiff, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to place autodialed calls to the Plaintiffs, or (b) they did not obtain prior express written consent.

> **Prerecorded Stop Class**: All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using a prerecorded

message, (3) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.

**Do Not Call Registry Class**: All persons in the United States from four years prior to the filing of this action through the present who (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it (a) obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiffs, or (b) did not obtain prior express written consent.

37.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

38.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

39.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)  whether Defendant's conduct constitutes a violation of the TCPA;

(b)  whether Defendant utilized an automatic telephone dialing system to make calls to Plaintiffs and the members of the Classes;

(c) whether Defendant made calls to Plaintiff Dillon and members of the classes using a prerecorded message;

(d) whether Defendant systematically made multiple telephone calls to Plaintiffs and consumers whose telephone numbers were registered with the National Do Not Call Registry;

(e) whether Defendant made prerecorded telephone calls and autodialed calls to Plaintiffs and members of the Classes without first obtaining prior express written consent to make the calls;

(f) whether Defendant continued calling Plaintiffs and members of the class after they told Defendant to stop calling; and

(g) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

40.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to any of the Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

41.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinge on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by

Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Dillon and the Prerecorded No Consent Class)**

42.     Plaintiff Dillon repeats and realleges the above paragraphs of this Complaint and incorporates them by reference herein.

43.     Defendant and/or its agents transmitted unwanted prerecorded solicitation telephone calls to telephone numbers belonging to Plaintiff Dillon and the other members of the Prerecorded No Consent Class.

44.     At no time did Defendant obtain prior consent from the Plaintiff Dillon to receive prerecorded solicitation telephone calls.

45.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (B). As a result of Defendant's conduct, Plaintiff Dillon and the other members of the Prerecorded No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

46.     In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff Dillon and the other members of the Prerecorded No Consent Class.

## SECOND CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed No Consent Class)**

47.     Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them by reference herein.

48.     Defendant and/or its agents transmitted unwanted autodialed calls to cellular telephone numbers belonging to Plaintiffs and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse,* without human intervention.

49.     At no time did Defendant obtain prior consent from Plaintiffs, or the Autodialed No Consent Class orally or in writing to receive solicitation autodialed calls.

50.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Long and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

51.     In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff Long and the other members of the Autodialed No Consent Class.

### THIRD CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Dillon and the Prerecorded Stop Class)**

52.     Plaintiff Dillon repeats and realleges the above paragraphs of this Complaint and incorporates them by reference herein.

53.     Defendant placed unsolicited and unwanted prerecorded phone calls to Plaintiff Dillon and the other members of the Prerecorded Stop Class on their cellular telephones after they had informed Defendant to stop calling them.

54.     By unwanted prerecorded phone calls to Plaintiff Dillon and other members of the Prerecorded Stop Class's telephones using an automated telephone dialing system after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express written consent.

55.     As a result of Defendant's unlawful conduct, Plaintiff Dillon and the members of the Prerecorded Stop Class suffered actual damages  and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Dillon and the other members of the Prerecorded Stop Class.

### FOURTH CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Long and the Do Not Call Registry Class)**

56.     Plaintiff Long repeats and realleges the above paragraphs of this Complaint and incorporates them by reference herein.

57.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of

said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

58.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

59.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[17]

60.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

61.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff Long and the Do Not

---

[17] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

Call Registry Class members who registered their respective telephone numbers on the National

Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that

is maintained by the federal government. These consumers requested to not receive calls from

Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

62.     Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy

of dealing with do not call requests, by failing to inform or train its personnel engaged in

telemarketing regarding the existence and/or use of any do not call list, and by failing to

internally record and honor do not call requests.

63.     Defendant made more than one unsolicited telephone call to Plaintiff Long and

other members of the Do Not Call Registry Class within a 12-month period without their prior

express consent to receive such calls. Plaintiff Long and other members of the Do Not Call

Registry Class never provided any form of consent to receive telephone calls from Defendant

and do not have a current record of consent to place telemarketing calls to their registered phone

numbers.

64.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing

purposes to residential and wireless telephone subscribers, such as Plaintiff Long and the Do Not

Call Registry Class, without instituting procedures that comply with the regulatory minimum

standards for maintaining a list of persons who request not to receive telemarketing calls from

them.

65.     Defendant violated 47 U.S.C. § 227(c)(5) Plaintiff Long and the Do Not Call

Registry Class received more than one telephone call in a 12-month period made by or on behalf

of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's

conduct as alleged herein, Plaintiff Long and the Do Not Call Registry Class suffered actual

damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

66.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dillon and Plaintiff Long, individually and on behalf of the Classes, pray for the following relief:

67.     An order certifying this case as a class action on behalf of the Classes as defined above, appointing Plaintiffs as the representatives of the Classes, and appointing their attorneys as Class Counsel;

68.     An award of actual and/or statutory damages and costs;

69.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

70.     An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

71.     Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff Dillon and Plaintiff Long request a jury trial of all claims.

Respectfully Submitted,

TODD DILLON and KAREN LONG, individually and on behalf of Classes of similarly situated individuals

Dated: October 11, 2018          By:   /s/ Stefan Coleman
                                                One of Plaintiffs' Attorneys

Stefan Coleman

law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
5 Penn Plaza, 23rd Floor
New York, NY 10001
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*\*Pro hac vice motion forthcomig*